## W. M. FREEMAN AND OTHERS V. WM. PERRY.

In a controversy as to right of property between conflicting claimants, if the same is in the possession of a third person, the bailee, who has received it (as a warehouseman) from the original owner, through whom both claimants profess to claim by purchase, and in a suit between them said bailee is made a co-defendant for refusing to deliver the property to the plaintiff, if he rests his defence and refusal on the ground that it belongs to the one or the other of them, neither of whom being his bailor, he undertakes to decide between them at his peril.

And where the property was in the hands of the bailee at the commencement of the suit, from whose possession it was taken by the plaintiff's writ of sequestration, held, that being liable as a defendant for the costs that had been incurred before the property was taken into the custody of the law, in case he had decided wrong between the claimants, he would be incom petent to testify as a witness in behalf of his co-defendants.

Where the witness offered by the defendants was defendant in a suit pending against him, claiming damages for the alleged malicious prosecution by the witness of the original owner of the property in controversy, (the prosecution charging the crime of swindling, by selling the property in controversy to the plaintiff in the suit on trial, after its sale to the defendants,) held, that the verdict to be rendered in the case on trial, was not receivable in the action for malicious prosecution to prove title in either party anterior to its rendition; and that the judgment would be equally inadmissible in said suit for malicious prosecution, to prove the facts upon the supposed existence of which it was rendered; and that, therefore, the witness is competent to testify in behalf of the defendants in the case on trial.

The objection to the competency of the witnesses, in the case stated, is not maintainable, because, the parties to the several suits are not the same; nor is it a case of a judgment which constitutes a muniment of title; nor would it be evidence in the suit for malicious prosecution, of the right of property in the cotton in dispute.

APPEAL from Cass.   Tried below before the Hon. W. S. Todd. This suit was brought by Perry against the appellants Freeman and Heald, Massie & Co., for the recovery of one hundred bales of cotton, or its value, and damages for its detention.   The petition describes the cotton by marks, brands, and weights, and alleges that it is in the warehouse of Freeman, a warehouseman, who holds the same subject to the order of said Heald, Massie &

Co., with the intent to deprive petitioner of the same; and that Freeman, although often requested to deliver the same to him, has refused to do so. A writ of sequestration was sued out by plaintiff, and levied upon the cotton described in the petition, and the same was replevied by Heald, Massie & Co.

Defendant Freeman, in his answer, disclaims all interest in the cotton. States that it was stored with him as a warehouseman, in the ordinary course of business, by May & Co., (which firm was composed of A. May and A. Kohn;) that being on storage with him, on the 26th day of January, 1855, May & Co. procured from him a certificate, showing that he had on storage one hundred bales of cotton, free of any advances on account of May &. Co., which would be shipped to Heald, Massie & Co. as soon as navigation opened direct to New Orleans; which certificate was then delivered to May & Co., and by them to Heald, Massie & Co. He also averred that the cotton is claimed by Heald, Massie & Co., who had replevied and taken possession of the same.

Heald, Massie & Co., in their answer, set up a purchase of said cotton from A. Kohn anterior to plaintiff's alleged purchase of the same. [The petition of plaintiff averred ownership of said cotton by purchase from Kohn, on the tenth day of September, 1855, the same being then in the warehouse of defendant Freeman.] The answer of Heald, Massie & Co. alleged further, that on the 26th day of January, 1855, said May & Co. being largely in- debted to them, in part payment thereof, transferred and delivered the said cotton to them, by procuring the certificate mentioned in Freeman's answer, delivering the same to them, and causing the cotton to be transferred on the books of said warehouseman, to the account of Heald, Massie & Co.

The plaintiff proved the transfer and delivery to himself, by Kohn, of said cotton, by indorsement and delivery of cotton receipts, given by said Freeman to May & Co. These cotton receipts specified numbers, weights and brands, and were dated at intervals from the fall of the year 1854, until during the month of April, 1855, describing respectively the lots or parcels of cotton so received by the warehouseman from time to time during the above interval of time, and showing the receipt of thirty-eight

of said bales after the 26th day of January, 1855.   It was proved by the plaintiff, that according to the custom there recognized by warehousemen, and those who store cotton with them, the indorsement of the warehouseman's receipt is deemed a delivery and transfer to the endorsee of the receipt of the goods described by it on storage.   The plaintiff proved a demand by him of Freeman for the delivery of the cotton in the fall of the year 1855, and notice of plaintiff's claim and title to the cotton, and refusal to deliver.

The defendants Heald, Massie & Co., introduced in evidence Freeman's certificate as follows:

"This is to certify that I have on storage one hundred bales of cotton, free of any advances, on account of Messrs. May & Co:, which will be shipped to Messrs. Heald, Massie & Co., New Orleans, as soon as navigation opens direct to New Orleans.

"Jefferson, 26th January, 1855.
                    (Signed)            "W. M. FREEMAN."

And the following letter:

" *Messrs. Heald, Massie & Co., New Orleans:*

" GENTLEMEN: In compliance with your request, we hand you above W. M. Freeman's certificate for one hundred bales of cotton, which we hope will prove satisfactory.   We shall write you more fully shortly, as the mail is about closing.   Business very dull, tho' we look for better times.

          " We are truly your friends,
     (Signed)                     "MAY & Co., per Foushee.

" We have more cotton on hand, which we shall ship when navigation opens; all will be right with us.
     (Signed)                     " M. &. Co., per Foushee."

They introduced in evidence a contract in writing, as follows :

"It is hereby agreed between Abraham Kohn and Heald, Massie & Co., through their agent Robert B. Scott, that when the party of the first part places into the hands of the said agent Scott one hundred bales of cotton, valued at thirty-five dollars per bale, and the conveyance by deed of the store and fixtures, as well as the lot upon which it stands, and at present occupied by A. Kohn, and valued at nine thousand dollars, the said Kohn hereby obligating himself to make to the said Heald, Massie & Co. a deed to said

premises above described, clear of all mortgages or other incumbrances whatever. And the said Kohn furthermore obligates himself to place into the hands of said agent Scott, as collateral security, promissory notes to the amount of four thousand four hundred and sixty-two 49-100 dollars, which notes are to be held by said agent until the arival of certain beef cattle, when the said agent Scott shall have the right either to take them at a fair valuation, or that they are to be shipped to New Orleans, and proceeds thereof applied to the payment of the aforesaid amount of notes held as collateral—such cattle to be delivered at Jefferson within sixty days from this date.

"Then the aforementioned Heald, Massie & Co., by their agent Robert B. Scott, obligate themselves by these presents to make to the said A. Kohn a full and clear receipt of all claims, dues, and demands, of whatever nature or kind soever, which they, the said Heald, Massie & Co. held or hold either against the firm of May & Co., which consisted of August May and Junius L. Oliver, or the late firm of May & Co., which consisted of A. May and A. Kohn; said release to be in full as above stated up to date. And the aforesaid Robert B. Scott, as the agent of J. H. Heald, at the same time obligates himself to release forever the said Abraham Kohn from all notes, book accounts, claims, and all other evidences of indebtedness which the said Heald held or may hold against the parties which constituted the firm of May & Co., which consisted of A. May and J. L. Oliver, as well as against the parties which constituted the late firm of May & Co., composed of A. May and A. Kohn. It is understood that the delivery of cotton and deed to the within described premises shall take place within sixty days from this date, or upon the demand of Robert B. Scott. It is further agreed that A. Kohn shall have the use of the within described premises until the first day of January next, 1856, he paying for the same two hundred dollars. Signed in duplicate, this 24th March, eighteen hundred and fifty-five, in presence of

"W. H. Foushee,　⎫　(Signed)　"A. KOHN,
"Virgil M. Dubose, ⎬　　　　"ROBERT B. SCOTT,
"Robert B. Scott. ⎭　"For Heald, Massie & Co., and J. H. Heald,"

Endorsement on foregoing contract:—

" Received from A. Kohn the following notes, for the purposes herein mentioned, viz:—

| | | |
|---|---|---|
| "Edward Stallcup's, for | .................... | $110 00 |
| "Silas Huskey's,        " | .................... | 469 50 |
| do                      " | .................... | 1475 76. |
| "Ward & Crawford's,    " | .................... | 2365 41 |

$4420 67

(Signed)                          "ROBERT B. SCOTT,
                 " For Heald, Massie & Co., and J. H. Heald."

They also introduced a receipt or contract as follows:—

                 "JEFFERSON, Texas, April 21, 1855.

" Received from A. Kohn 100 bales cotton, estimated at $3500, in settlement account, this day; said cotton to be shipped to New Orleans to us, and when sold the net proceeds to be applied to the payment of the above $3500: if the net should be less than $3500, said Kohn is to pay the deficiency; if more, the surplus to go to his credit.   Also his note, this day, at eight months from date, for $3204 59.   This note, and the 100 bales cotton, together with a contract made with R. B. Scott some days ago, on record, when completed and executed and the note paid, shall be in full, final, and complete payment of all demands held by J. H. Heald individually, or Heald Massie & Co., of New Orleans, against the late firm of May & Co., also the firm of May & Co., consisting of A. May and J. L. Oliver, and May & Co., consisting of A. May and A. Kohn, collectively and individually—said contract of Scott being hereby ratified.

      (Signed in duplicate)            "J. H. HEALD,
                 " For himself and Heald, Massie & Co."

Endorsed on back thus:—

" The within contract is according to agreement.

                 "April 21, 1855.

(Signed)                          "J. H. HEALD,
              " Also representing Heald, Massie & Co.

(Signed)                          "A. KOHN,
              " Also representing May & Co."

There was no evidence of a delivery of the cotton mentioned, either in the certificate of Freeman or in the contract of the 24th day of March, 1855.   The cotton delivered under the contract of April 21st, 1855, is not in dispute.   The evidence in detail need not be stated, as its purport and legal effect are disposed of by the opinion of the court.

On the trial, after the testimony was heard in behalf of the plaintiff, the defendants, Heald, Massie & Co., offered to prove by their co-defendant, Freeman, that the cotton in controversy was the same one hundred bales that he had transferred on his books by order of May and Kohn to said defendants, Heald, Massie & Co., on the 26th day of January, 1855.   That May and Kohn had not only required his certificate that he had a hundred bales of cotton in store, (as per certificate above set out,) but also ordered him to make a transfer of the same on his books to Heald, Massie & Co.; also, that when the sheriff made the levy of the writ of sequestration, he asked for the cotton that was claimed by Heald, Massie & Co., which was pointed out to him, the same being the cotton transferred as aforesaid, upon which said sheriff made his levy; and that the cotton specified in plaintiff's cotton receipts (those endorsed by Kohn to plaintiff) had been sold by Kohn to other persons.   On plaintiff's objection, the witness was excluded, on the ground that he was incompetent.   The plaintiff had proved a conversation had in the summer of 1855, between Freeman and Kohn, in respect to Freeman's authority to ship the cotton in his charge to Heald, Massie & Co., as he was then preparing to do through the instructions of Scott, the agent of Heald, Massie & Co., and also in respect to Freeman's authority to make a transfer of the cotton on his books to Heald, Massie & Co., in which conversation Kohn notified Freeman not to ship the cotton, and that he would hold him responsible if he did so; and that Freeman answered in reply to a direct question to the point, that Kohn had never authorized him to make any transfer of his (Kohn's) cotton on his books to Heald, Massie & Co., unless he was authorized by the certificate, and said, "there was a mistake about that, and he would see Mr. Scott, and try and get it settled."

Freeman v. Perry.

After the pleadings were presented to the court, Freeman moved the court to strike his name from the docket as a defendant, which was refused. The defendants offered to examine Scott, to which plaintiffs objected, on the ground of his incompetency in this, that there was then pending in the District Court of Cass county an action for malicious prosecution and false imprisonment, in which Kohn was plaintiff, and Scott was one of the defendants, which action was founded upon an arrest of said Kohn by warrant based upon an affidavit made before a justice of the peace by said Scott, charging Kohn with the criminal offence of swindling, by selling the cotton in controversy to the plaintiff in this suit. The records were in evidence to show the above facts, and the objection was sustained, and the witness was determined to be incompetent.

Upon the verdict of the jury for the plaintiff, assessing the value of the cotton at four thousand five hundred and fifty-seven dollars and twenty cents, the court rendered judgment accordingly for said amount against the defendants and the securities upon the replevy bond.

Of the other questions presented by the record, no further statement need be made here, under the view taken of the case by this court.

*Benners, Mills & Murrah*, for the appellants.—As the objection to the competency of a party to the suit is founded not upon the abstract ground of being a party, but upon the ground of being interested, it follows that if a person tendered as a witness has no interest whatever in the event of the suit, he will be competent, although he is a party to the record. The general principles which govern the decision on this point, are laid down by C. B. Gilbert, as follows: "If any person be arbitrarily made a defendant, to prevent his testimony in the cause, the plaintiff shall not prevail by that artifice." (See Phil. on Evid., vol. 1, p. 33.)

But the defendant against whom nothing is proven, shall, notwithstanding, be sworn; for here the defendant does not swear in his own justification, but in justification of another with whom he has been unnecessarily joined. And if this were not allowed, the plaintiff might turn all the several witnesses into defendants,

and thus might be able to prove what he pleased without contest. (See Gil. Ev., 117 ; Bul. N. P., 285 ; Phil. on Ev., p. 56.)

"This benefit," says Lord Ch. J. Tindal, "may arise to the witness in two cases; first, when he has a direct and immediate benefit from the event of the suit itself; secondly, when he may avail himself of the benefit of the verdict in support of his own claims in a future action." (6 Bing., 394 ; see Phil. on Evid., page 84.)

It appears that in an action in which a question arises concerning the validity of a deed, the attorney who prepared the deed is a competent witness to prove that the deed is valid, notwithstanding there is another suit pending against him, in which he must fail if the deed be invalid. (5 Bing., 368, Hudson v. Revett. See Phil. on Ev., p. 120.)

The rule excluding parties from being witnesses, applies to all cases where the party has any interest at stake in the suit. (See Greenl. on Ev., § 347.)

The general doctrine is that when the suit is ended as to one of several defendants, and he has no direct interest in its event as to the others, he is a competent witness for them. (Greenl. on Evid., § 355.)

But if, at the close of plaintiff's case, there is one defendant against whom no evidence has been given, and none is anticipated, he instantly will be acquitted ; the mere fact of mentioning the party in the *simul cum* in the declaration, does not render him incompetent as a witness. (Greenl. on Ev., 358.)

The true test of the interest of a witness is, that he will either gain or lose by the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in another action. (Greenl. on Ev., §390.)

Objections on the score of interest are not to be favored. The safe rule is, admit the witness whenever there is doubt of the facts. ( 9 A. & E., 327; Shipton v. Thornton. See Phil. on Evid., vol. 1, p. 105.)

In Walworth v. Montford, 4 W. C. C. R., 79, the plaintiff closed his case in an action for malicious prosecution, without producing any evidence against one of the defendants. Washing-

ton, J., directed his immediate acquittal, and allowed him to be called as a witness for the defendant. (See also Wakely v. Hart, 6 Bing., 319.) In Q. B., 733, Pipe v. Sleet, held, that a witness who suffered judgment by default is competent for his co-defendant.

If the plaintiff includes persons in the suit against whom no evidence is offered, they may be witnesses. The bare circumstance of being a defendant, therefore, is not an exclusion. The incompetency of a witness on the ground of interest, must be confined to a legal fixed interest in the event of the suit. (Stockham v. Jones et al., 10 Johns. R., 21.)

If there be two or more defendants in ejectment, and no evidence be given of the possession of one of them, the jury may find a verdict for him at the bar, and he may be examined by the other defendants. (4 W. C. C. R., 169.)

Reference is had to the statement of facts in the case of Walworth v. Montford, W. C. C. R., 79.

The incompetency of a party to the record as a witness, depends upon the fact or not of his being interested in the event of the suit. If not interested, he is a competent witness. (Hart v. Halworth, 3 Rawle., 409.)

No case has been cited, nor can any be found in which a witness has been refused, upon the objection in the abstract, that he was a party to the suit. On the contrary, many have been brought forward in which parties to the suit who have suffered judgment by default, have been admitted as witnesses. (Warrill v. Jones, 7 Bing., 395—a leading case.)

It is clear that one defendant can be a witness for another, where he does not thereby aid his own interest. (6 T. B. Monroe, 305.)

The reason of the rule against the competency of testimony of a party to the record, in an action at law is his interest in the matter, and if the witness has no possible interest to gain by the event of the suit, he ought to be sworn. (6 T. B. Monroe, 617, Lampton v. Lampton, Ex'rs.)

It is now settled that the acquittal should be directed at the close of the plaintiff's proof. (Child v. Chamberlain, 6 Car & Payne, 213.)

There is no doubt that a party defendant against whom there has been no evidence adduced would, according to the strict rules of evidence, be a competent witness for his co-defendant. (Doherty v. Dorsey, 4 Bibb, 208.)

Although the case of the witness be in every point and particular the case of the party by whom he is called to testify; although he expects a benefit from the event, and in short, although he be subject to as strong a bias as can influence the understanding and actions of man; yet if he be not implicated in the legal consequences of the judgment, he is competent. By legal consequences are meant those which are fixed, certain and actual, and by which an advantage not depending upon a contingency is to be gained or lost. Such, for instance, as being able to give the verdict in evidence on the one hand, or being subject to an incumbrance or duty on the other. (Bennett v. Witherington, 16 Serg. & Rawle, 195.)

It was held in New York by the Court of Errors, in the case of Vanness & Furham, 3 Johns. Cases cited in 2 Smith's Leading Cases, 93, " that if the witness will not gain or lose by the event of the cause, and if the verdict cannot be given in evidence for or against him, he is admissible."

When there is no evidence against one of the defendants, he ought to be discharged and may be examined as a witness for the other defendants. If this were not allowed, great injustice might be done by including witnesses in the suit for the express purpose of shutting out their testimony. (Vandeusen v. Slyck, 15 Johns. Rep., 233. See also Labor v. Robbin, 4 Comstock, 549; Harris v. Maulding, 13 Ala. Rep., new series, 677.)

When the plaintiff has closed his testimony, and has wholly failed to adduce any evidence against one of several joint defendants, it unquestionably becomes the duty of the court to permit the jury to retire and find a verdict of acquittal against the defendant, against whom no proof has been offered. Not to allow other co-defendants the full benefit of this principle would be to put it completely in the power of the plaintiff at his mere option to exclude the whole of the defence, by making all of the

witnesses joint defendants in the same action. (Ballard *et al.* v. Wakes, 2 Ark., 53 ; Moon v. Elder, 3 Hill R.

The refusal to direct a verdict at the close of plaintiff's case, for those of the defendants against whom no evidence has been given, may be assigned as error. Vandeusen v. Vanslyck, 15 Johns., 233.)

It has been settled by the unanimous opinion of all the judges that if there is no evidence against one defendant, at the conclusion of the case on the part of the plaintiff, such defendant is to be acquitted, so that all defendants not fixed by the plaintiff's evidence are to be acquitted before any part of the defence is gone into. (Child v. Chamberlain, Car & Payne R., 213.)

A party to the record is a competent witness, provided he be disinterested. (Warrill v. Jones, 7 Bing., 395 ; Bent v. Baker, 3 T., 27.)

An objection to a witness on the ground of a future interest, goes only to his credit, unless the judgment could be given in evidence for him in another suit. (7 T. R., 59.)

*S. M. Hyde, T. J. & J. H. Rogers,* and *W. P. Hill,* for the appellee.—The first ground for a reversal, as contended for by appellant's counsel, " is the refusal of the court below to discharge Freeman as a party defendant, upon motion of defendants, so that he might be used as a witness by his co-defendants;" and " the refusal to permit him to testify as a witness for his co-defendants."

There was no error in the court below in its rulings upon this subject; for Freeman was a party, and a necessary party, to the suit. He was the one that wrongfully and illegally withheld the cotton from plaintiff; it was in his possession; a demand had been made of him by plaintiff for the cotton, and he had refused to deliver it up to plaintiff. This amounted to a conversion of the cotton on his part—it was a tort or wrong for which he alone was liable in an action for damages to the plaintiff, at least to the full amount of the value of said cotton. (Starkie on Ev., vol. 2, part 2, p. marginal, 1145.)

Mr. Greenleaf upon this subject says, that " If the person who

is a material witness for the defendants has been improperly joined with them in the suit, for the purpose of excluding his testimony, the jury will be directed to find a separate verdict in his favor; in which case the cause being at an end with respect to him, he may be admitted a witness for the other defendants. But this can be allowed only where there is no evidence against him, for then only does it appear that he was improperly joined through the artifice and fraud of the plaintiff. But if there be any evidence against him, though in the judge's opinion not enough for his conviction, he cannot be admitted as a witness for his fellows, because his guilt or innocence must wait the event of the verdict, the jury being the sole judges of the fact." (1 Greenl. 358 and the note 2 thereto, and the authorities referred to in said note.) The admission of the witness in the cases referred to in said note seems to rest (so it is said in the note,) in the discretion of the judge. (Brotherton v. Livingston, 3 Watts & Serg. 334.) And being a party to the suit the court did right in excluding him from testifying.

"The rule excluding parties from being witnesses applies to all cases where the party has any interest at stake in the suit, although it be only a liability to costs." (1 Greenl. on Ev., 347.) In this country where the party to the record is in almost every case liable to costs in the first instance, in suits at law, he can hardly ever be competent as a witness. (Fox. v. Adams, 16 Mass., 118, 121; Sears v. Dillingham, 12 Mass.. 360; Frear v. Evertson, 20 Johns., 142. See also Willis on Trustees, pp. 227, 228, 229.)

The second ground, as contended for by appellant's counsel for a reversal is, "That the court below erred in excluding Robert B. Scott from testifying as a witness in the case."

It is a well settled rule of evidence that "a witness is incompetent where the record would, if his party succeeded, be evidence of some matter of fact to entitle him to a legal advantage or repel a legal liability." (See Starkie on Ev., vol. 1, p. marginal, 119.) And Mr. Greenleaf lays this down as the rule for testing the competency of a witness on the score of interest, viz: "The true test of the interest of a witness is that he will either gain or lose

Freeman v. Perry.

by the direct operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action." (1 Greenl. on Ev., 390.)

The interest which disqualifies a witness must be either a legal, certain and immediate interest in the event of the cause, or interest in the record, for the reason that it will be legal evidence for or against him in another suit. A remote or contingent interest will not disqualify, nor will a merely honorary obligation. Nor can it be left to the opinion or judgment of the witness to decide whether or not he is competent. (Hill v. Miller, 2 Swann, Tenn., 659.)

If the verdict and judgment in this case will, in any wise, protect the witness from liability in any future litigation, or diminish his liability, or tend to that result, then the witness was incompetent.

"There are some cases in which, from the connection of the witness with the subject matter of the litigation, the decision of the cause, in one way, would necessarily have the effect to relieve the witness from all future liability, while a contrary decision would leave him exposed to a suit. Although the record in a former suit, to which he was not a party, could not be given in evidence against him to establish his liability in the subsequent litigation, the witness is interested in producing a decision in the cause which will have the effect of shielding him from future liability. He is, therefore, incompetent to give testimony for the purpose of producing such a result, or in favor of the party who is seeking to obtain such a decree. If, in one event, his liability is diminished, he is not a competent witness for that party, or to produce such an event." (Rogers v. Dibbs, 3 Paige's C. R. 238; Woods v. Skinner, 6 Paige's C. R. 81.) This principle is well established and illustrated in these cases, and in others therein referred to.

WHEELER, C. J.—The merits of this case depend upon the question whether there had been a sale and transfer of the cotton by Kohn to the defendants, Heald, Massie & Co., before the plaintiff purchased. Upon the evidence in the record it can not

be affirmed that there had been such a sale and transfer. There is a considerable portion of this cotton which had not been delivered to the warehouseman when he gave his receipt of the 26th of January, and that which had is not identified by the evidence as the cotton embraced in the receipt. The contract of the 24th of March does not evidence a sale, but a contract of sale thereafter to be executed by the delivery of the cotton. It was not delivered under that contract. The defendants, by their agent, refused to receive it. Upon the evidence in the record it is free from doubt that the case was rightly decided on the merits. The only question which it is material to consider is, whether the court erred in excluding evidence offered by the defendants.

We are of opinion that the court did not err in refusing to allow the defendants, Heald, Massie & Co., to introduce their co-defendant Freeman as a witness in their behalf. He refused to deliver the cotton to the plaintiff, setting up as an excuse the title of his co-defendants. Generally a bailee is bound to deliver the goods back to the person by whom he has been intrusted with the custody of them. And if the defendant, Freeman, had refused to deliver the goods to the plaintiff because he was not his bailor, and had detained them to await the order of the bailor, and the order was not produced, it would have presented a different question. But it appears by the answer of the defendant that he did not rest his right to detain the property upon this ground, but upon the ground that his co-defendants had the sole right to control it. He, therefore, undertook to decide between the conflicting claimants, neither of whom was his bailor. In doing so he acted at his peril; and if he decided wrongly he laid himself liable for the costs that had been incurred before the property was taken into the custody of the law; and this was sufficient to disqualify him as a witness for his co-defendants.

There is more cause to question the propriety of rejecting the witness Scott. The objection to the witness proceeded on the ground that the verdict and judgment in this case might be evidence in the suit pending between the witness and Kohn for a malicious prosecution. But it is not perceived that such use could be made of the verdict or judgment. It is not between the same

parties. It is not the case of a judgment which constitutes a muniment of title; nor would it be evidence in the suit for malicious prosecution of the right of property in the cotton; still less of a lien upon it at the time of the sale by Kohn to the plaintiff, with a view to bear upon the question of probable cause for the alleged malicious prosecution. A judgment is always admissible to prove its existence as a fact and its legal consequences; but it is not receivable to prove the facts upon the supposed existence of which it was rendered; nor indeed anything beyond its own existence and the legal consequences resulting from it. The verdict in this case could not be received in the action for malicious prosecution to prove title in either party anterior to its rendition. This supposed ground for rejecting the witness was, therefore, untenable, and none other was urged. The exclusion of the witness was, therefore, erroneous. As the evidence upon another trial may be different, it would be an unprofitable consumption of time to revise the other rulings complained of. The judgment is reversed and the cause remanded for further proceedings.

Reversed and remanded.